## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALIEA HUGHES-PHILLIPS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No.: <br><br> CLASS ACTION COMPLAINT <br><br> Jury Trial Demanded |

Plaintiff Aliea Hughes-Phillips ("Plaintiff"), individually and on behalf of all others similarly situated, alleges, upon personal knowledge as to herself and upon information and belief as to other matters, as follows:

### SUMMARY OF THE CLAIMS

1.     This case challenges Defendant New York Life Insurance Company's ("New York Life" or "Defendant") policy and practice of denying employment to qualified job applicants, like Plaintiff, because of arrests that *never* resulted in a conviction.

2.     Under New York State and City law, it is *per se* illegal for an employer to inquire about arrests or use them as a basis to deny employment when the charge was resolved in an individual's favor.[1]

3.     New York Life's hiring practices flout New York law, treating individuals as guilty of crimes for which they were never convicted, and inverting the fundamental U.S. legal principle that an individual is innocent until proven guilty.

---

[1]     For purposes of this Complaint, adjournments in contemplation of dismissal and their equivalents are considered arrests resolved in an individual's favor.

4.      Beyond their facial illegality, New York Life's practices have a pernicious societal effect.  Discrimination on the basis of arrest record disproportionately impacts New Yorkers of color, who are arrested at rates markedly higher than their share of the New York State population.

5.      Accordingly, Plaintiff brings this case on her own behalf and that of a proposed class of all others similarly situated against New York Life for violating their rights under the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, by impermissibly inquiring into, and then denying employment because of, arrests that were resolved in their favor.

## STATUTORY BACKGROUND

6.      Both New York State and City make it *per se* illegal for an employer to inquiry about or deny employment because of arrests that were resolved in an individual's favor.

7.      As the NYCHRL explains, "there is no greater danger to the health, morals, safety and welfare of . . . [New York City] and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record."  N.Y.C. Admin. Code § 8-101.

8.      Such acts of discrimination "menace the institutions and foundation of a free democratic state."  *Id.*

9.      The NYHRL specifies that:

It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association . . . to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of

such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual . . . . An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. . . . For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, shall not be considered a pending action, unless the order to adjourn in contemplation of dismissal is revoked and the case is restored to the calendar for further prosecution.

N.Y. Exec. Law § 296(16).

10.     Thus, the NYHRL makes it illegal for an employer to: (i) ask about arrests that were terminated in favor of the applicant; (ii) require that applicants answer questions about such arrests; or (iii) take an adverse action because of such arrests.

11.     The NYCHRL incorporates the NYHRL's protections, deeming it "an unlawful discriminatory practice" to "[d]eny employment to any applicant . . .  by reason of an arrest or criminal accusation" or "[m]ake any inquiry in writing or otherwise, regarding any arrest or criminal accusation of any applicant" when such action would violate N.Y. Exec. Law § 296(16). N.Y. Admin Code § 8-107(11).  Section 11 of the NYCHRL represents a "complete ban on employment decisions based on an arrest that did not lead to a criminal conviction."  New York City Commission on Human Rights, *Fair Chance Act: Legal Enforcement Guidance*, at fn. 14 (Rev. May 24, 2019) (citing N.Y. Admin Code § 8-107(11)), https://www1.nyc.gov/site/cchr/law/fair-chance-act.page (last visited Nov. 30, 2020).

12.     Together, these statutory protections reflect New York's judgment that individuals should not be denied employment based on allegations that were never substantiated or proven in court.

13.     Strong enforcement of New York's laws protecting against discrimination on the basis of an arrest record is especially important because of the pernicious racial impact that can

result from screening applicants because of their record.  For example, according to the New York State Computerized Criminal History repository, in 2018 Black individuals made up 15% of the population of New York State, but 38% of those arrested and 45% of those arrested for felonies.[2]  In contrast, white individuals made up 55% of the population of New York State, but only 33% of arrests and only 27% of felony arrests.[3]  A policy that screens for arrests, if allowed to continue, will continue to disproportionately impact the hiring prospects of Black applicants.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action, Plaintiff and, upon information and belief, at least one class member, is a citizen of a state different from Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because New York Life is headquartered and resides in this District and because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

16.     Contemporaneously with the filing of this Complaint, Plaintiff will send a copy of the Complaint to the New York City Commission of Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of Section 8-502 of the New York City Administrative Code.

## PARTIES

### Plaintiff

---

[2]     New York State Division of Criminal Justice Services, *NYS Arrests and Prison Sentences by Race/Ethnicity*, https://www.criminaljustice.ny.gov/crimnet/ojsa/comparison-population-arrests-prison-demographics/2018%20Population%20Arrests%20Prison%20by%20Race.pdf (last visited Nov. 30, 2020).

[3]     *Id.*

17.     Ms. Hughes-Phillips is Black and a resident of Irvington, New Jersey.  She was arrested in 2010 and 2017.  Each of her arrests was dismissed and resolved in her favor before New York Life denied her employment.  Ms. Hughes-Phillips has never been convicted of a felony or misdemeanor crime.

18.     Plaintiff and the proposed Class Members she seeks to represent are each a "person" within the meaning of the NYHRL and NYCHRL.

**Defendant**

19.     New York Life is a Fortune 100 company and one of the largest life insurance companies in the United States.

20.     New York Life is a New York corporation headquartered at 51 Madison Avenue, New York, NY 10010.

21.     New York Life has approximately 4,670 offices nationwide and, in New York State alone, offices in: Albany, Brooklyn, Buffalo-Erie, Finger Lakes, Greater New York, Hudson Valley, Long Island, Manhattan, Nassau, Queens, and Westchester.[4]

22.     At all relevant times, New York Life has been an employer and person as defined by the NYHRL and NYCHRL.

## STATEMENT OF FACTS

**New York Life's Uniform Criminal History Policies and Practices**

23.     New York Life employs uniform policies and practices to evaluate applicants' criminal history, including arrests.

---

[4]     *See* New York Life, *General Office Directory*, https://www.newyorklife.com/careers/go-directory#n (last visited Nov. 30, 2020).

2

24.     As part of its routine policy and practice, New York Life uses Business Information Group ("BIG"), a third-party consumer reporting agency, to collect applicant criminal history information—including arrest information regardless of whether the arrest was resolved in the applicants' favor.

25.     As part of its routine policy and practice, New York Life accesses the Federal Bureau of Investigation's ("FBI") fingerprint database, to collect additional applicant criminal history information—including collection and use of arrest information regardless of whether the arrest was resolved in the applicants' favor.[5]

26.     As part of its routine policy and practice, New York Life inquires about and requires that applicants respond to questions about their criminal history—including arrest information regardless of whether the arrest was resolved in the applicants' favor.

27.     As part of its routine policy and practice, New York Life denies employment to applicants with one or more arrests regardless of whether those arrests were resolved in the applicants' favor.

28.     Upon information and belief, New York Life has not: (i) validated its criminal history policies and practices consistent with the Uniform Guidelines on Employee Selection Procedures; (ii) studied the impact of arrests on an applicant's suitability for employment; or (iii) inquired into whether its arrest policy and practice has a racial impact.

**Plaintiff Hughes-Phillips' Experiences**

---

[5]     The FBI imposes certain "USE AND DISSEMINATION RESTRICTIONS" on New York Life's use of this information, including that "AN INDIVIDUAL SHOULD BE PRESUMED NOT GUILTY OF ANY CHARGE/ARREST FOR WHICH THERE IS NO FINAL DISPOSITION STATED ON THE RECORD OR OTHERWISE DETERMINED."

29.     In approximately April 2019, Ms. Hughes-Phillips applied to work for New York Life as a non-exempt Representative / Customer Service Professional ("CSP") at New York Life's Greater New York General Office, located at 420 Lexington Avenue, New York, NY 10170.

30.     According to New York Life, the CSP position is a service/clerical position that does not require any sales activities.

31.     In a letter dated June 13, 2019, New York Life offered Ms. Hughes-Phillips the position of CSP at the 420 Lexington Avenue, New York, NY location.

32.     On or about June 17, 2019, New York Life requested a background check on Ms. Hughes-Phillips through BIG that included a search for convictions and arrests.

33.     Shortly thereafter, New York Life requested a search of the FBI fingerprint database that included a search for convictions and arrests.

34.     In a July 1, 2019 email, New York Life Senior Specialist, Human Resources, Danielle Bonici sent Ms. Hughes-Phillips a correspondence identifying 2010 and 2017 arrests revealed through the criminal history searches of BIG and the FBI.  That correspondence stated that Ms. Hughes-Phillips was required to provide New York Life: "with **all relevant court documentation** and **a written explanation** regarding each criminal charge . . .  no later than close of business on **July 8, 2019**" and stating that if Ms. Hughes-Phillips "fail[ed] to provide the Company with a satisfactory explanation, it may have to rescind your conditional offer of employment."

35.     In a July 7, 2019 email response, Ms. Hughes-Phillips provided the requested information, including court documentation and a written explanation of the charges establishing that her arrests had been resolved in her favor.

36.     Over the next few days, Ms. Bonici inquired further by email about Ms. Hughes-Phillips arrests, and Ms. Hughes-Phillips provided further documentation establishing that her arrests had been resolved in her favor.

37.     On or about August 8, 2019, New York Life Talent Acquisition Manager Joan Rose-Palacios called Ms. Hughes-Phillips and told her that New York Life was withdrawing its offer of employment and Ms. Hughes-Phillips should expect a letter memorializing that denial of employment.

38.     That letter, sent by email the same day, stated in pertinent part: "We are sorry to inform you that we are withdrawing our conditional offer of employment.  Our decision was influenced in part, by information contained in an Investigative Consumer Report prepared at our request by Business Information Group, as well as, information contained in the FBI report."

39.     After receiving this denial, Ms. Hughes-Phillips asked Ms. Bonici for additional information about why she was denied employment.  After further back and forth, Ms. Bonici responded by email on August 12, 2019, stating that: "We cannot provide specific detail as we were advised by Employee Relations; however, the withdrawal was due to the findings in both your background check and your fingerprinting FBI report."

40.     Ms. Hughes-Phillips had previously worked for New York Life from approximately 2015 until approximately July 2017, in a sales agent position.  New York Life was aware of Ms. Hughes-Phillips' 2010 arrest during her prior employment with the company.

41.     On or about September 18, 2019, Ms. Hughes-Phillips filed a verified complaint with the New York State Division of Human Rights (the "DHR"), alleging that New York Life had unlawfully discriminated against her because of her arrest record.

2

42.     After an investigation of her claims, that included written submissions by Ms. Hughes-Phillips and New York Life, on or about June 24, 2020, the DHR issued a Final Investigation Report and Basis of Determination finding "Probable Cause to support the allegations of the complaint."

43.     As part of the basis for this determination, "[t]he investigation revealed that despite both arrests being resolved in [Ms. Hughes-Phillips'] favor, they were used against her in connection to her employment opportunities."

44.     After this finding, on or about August 21, 2020, Ms. Hughes-Phillips requested a dismissal to allow her to bring her claims in court.

45.     In a letter dated November 16, 2020, the DHR granted Ms. Hughes-Phillips a dismissal for administrative convenience.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this case as a proposed Class action pursuant to Federal Rule of Civil Procedure ("Rule") 23 on behalf of herself and two classes of persons (collectively, the "Classes").

47.     Plaintiff asserts the First Cause of Action against New York Life on behalf of the "NYHRL Class" defined as follows:

> **NYHRL Class:** All individuals who, during the applicable three-year statute of limitations period from August 21, 2017, through judgment, were denied employment for positions with New York Life in New York State based in whole or in part on arrests resolved in their favor (including adjournments in contemplation of dismissal and their equivalents).

48.     Plaintiff asserts the Second Cause of Action against New York Life on behalf of the "NYCHRL Class" defined as follows:

> **NYCHRL Class:** All individuals who, during the applicable three-year statute of limitations period from August 21, 2017, through judgment, were denied employment for positions with New York Life in New York City based in whole

or in part on arrests resolved in their favor (including adjournments in contemplation of dismissal and their equivalents).

49.     The members of the NYHRL Class and the NYCHRL Class are collectively referred to as "Class Members."

50.     Plaintiff reserves the right to amend the definition of the above-defined classes based on discovery or other factual or legal developments.

51.     The Class Members identified herein are so numerous that joinder of all members is impracticable.  The precise number is uniquely within New York Life's possession.  Class Members may be notified of the pendency of this action by notice.

52.     There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common legal and factual questions include, among others, whether:

(a)     New York Life's criminal history policy and practice violates the NYHRL and NYCHRL by:

    i.    inquiring into arrests that were resolved in Class Members' favor;

    ii.   requiring that Class Members answer questions about arrests that were resolved in their favor; and

    iii.  denying employment to Class Members at least in part because of arrests that were resolved in their favor;

(b)     A declaratory judgement and/or injunctive relief is warranted regarding New York Life's policies and practices; and

(c)     Compensatory, exemplary, nominal and/or punitive damages for Class Members are warranted.

53.     Plaintiff is a member of the classes she seeks to represent.  For example, she has arrests that were resolved in her favor, New York Life inquired about those arrests, she was

2

required to answer those inquiries, and New York Life denied employment to Plaintiff because of those arrests.

54.     Plaintiff's claims are typical of the claims of the classes she seeks to represent and Plaintiff is entitled to relief under the same causes of action as other Class Members.

55.     Plaintiff will fairly and adequately represent and protect the interests of Class Members because her interests coincide with, and are not antagonistic to, the interests of the Class Members she seeks to represent.  There is no conflict between Plaintiff and the Class Members.  Plaintiff has retained counsel who are competent and experienced in complex class actions, including litigation pertaining to criminal background checks, the NYHRL, the NYCHRL, other employment litigation, and the intersection thereof.

56.     Class certification is appropriate under Rule 23(b)(2) and/or (c)(4) because New York Life has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole (or as to a specific subset of issues).  Class Members are entitled to declaratory and injunctive relief to end New York Life's common, uniform, unfair, and discriminatory policies and practices.

57.     Class certification is also appropriate under Rule 23(b)(3) and/or (c)(4) because common questions of fact and law predominate over any questions affecting only individual Class Members.  Class Members have been damaged and are entitled to recovery as a result of New York Life's uniform policies and practices.  A class action also is superior to other available methods for the fair and efficient adjudication of this litigation.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### New York Life's Discriminatory Use of Arrest Records Under the NYHRL

**(N.Y. Exec. Law § 290 *et seq.*, Brought by Plaintiff
on Behalf of Herself and the NYHRL Class)**

58.     Plaintiff, on behalf of herself and the NYHRL Class, incorporates the preceding

paragraphs as alleged above.

59.     New York Life inquired into the arrest records of Plaintiff and the NYHRL Class.

60.     New York Life required that Plaintiff and the NYHRL Class answer questions

about arrests that were resolved in their favor.

61.     New York Life denied employment to Plaintiff and the NYHRL Class, at least in

part, because of arrests that were resolved in their favor.

62.     As a result of New York Life's actions, Plaintiff and the NYHRL Class have been

deprived of their rights and have lost employment opportunities, earnings and other employment

benefits.

63.     In addition to damages, Plaintiff and the NYHRL Class seek injunctive and

declaratory relief to correct New York Life's discriminatory policies and practices.

**SECOND CLAIM FOR RELIEF**
**New York Life's Discriminatory Use of Arrest Records Under the NYCHRL**
**(N.Y.C. Admin. Code. § 8-101 *et seq.*, Brought by Plaintiff
on Behalf of Herself and the NYCHRL Class)**

64.     Plaintiff, on behalf of herself and the NYCHRL Class, incorporates the preceding

paragraphs as alleged above.

65.      New York Life inquired into the arrest records of Plaintiff and the NYCHRL

Class.

66.     New York Life required that Plaintiff and the NYCHRL Class answer questions

about arrests that were resolved in their favor.

2

67.     New York Life denied employment to Plaintiff and the NYCHRL Class, at least in part, because of arrests that were resolved in their favor.

68.     As a result of New York Life's actions, Plaintiff and the NYCHRL Class have been deprived of their rights and have lost employment opportunities, earnings and other employment benefits.

69.     In addition to damages, Plaintiff and the NYCHRL Class seek injunctive and declaratory relief to correct New York Life's discriminatory policies and practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members pray for relief as follows:

(a)     A declaratory judgment that the practices complained of herein are unlawful and violate the NYHRL and NYCHRL;

(b)     A preliminary and permanent injunction against New York Life and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

(c)     An order that New York Life institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants with arrest records, and that New York Life eradicate the effects of past and present unlawful employment practices;

(d)     Certification of the case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (3) and/or (c)(4);

(e)     Designation of Plaintiff as representatives of Class Members;

(f)     Designation of Plaintiff's counsel of record as Class Counsel;

(g)     Restoring of Plaintiff and Class Members to their rightful positions at New York Life or those positions equivalent at New York Life (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

(h)     An award of backpay and/or compensatory damages;

(i)     An award of nominal and/or exemplary damages;

(j)     An award of punitive damages;

2

(k)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(l)     Such other injunctive and/or declaratory relief as necessary to correct New York Life's discriminatory policies and practices;

(m)    Pre-judgment and post-judgment interest, as provided by law;

(n)    Payment of a reasonable service award to Plaintiff, in recognition of the services she has rendered and will continue to render to Class Members, and the risks she has taken and will take; and

(o)    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
        December 3, 2020

Respectfully submitted,

By:   _/s/ Ossai Miazad_

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

**YOUTH REPRESENT**
Michael C. Pope
Eric Eingold
11 Park Place, Suite 1512
New York, New York 10007
Telephone: (646) 759-8080
Facsimile: (646) 759-8082

*Attorneys for Plaintiff and the Putative Class*

2